APPEAL NO. 11-15190

CONSOLIDATED WITH
APPEALS NOS. 11-15182, 11-15186, 11-15191, 11-15192

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### IN RE: THE NVIDIA GPU LITIGATION

STEVEN NAKASH, ET AL.,
*CLASS PLAINTIFFS – APPELLEES*,
v.
STEVEN F. HELFAND,
*OBJECTOR – APPELLANT*,
v.
NVIDIA CORPORATION,
*DEFENDANT – APPELLEE*.

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA
HON. JAMES WARE, DISTRICT JUDGE
DISTRICT COURT CASE NO. 5:08-CV-04312-JW

### OPENING BRIEF OF OBJECTOR – APPELLANT
### STEVEN F. HELFAND

JOHN W. DAVIS, SBN 200113
LAW OFFICE OF JOHN W. DAVIS
501 W. BROADWAY, SUITE 800
SAN DIEGO, CA 92101
TELEPHONE: 619.400.4870

MARCUS DANIEL MERCHASIN, SBN 55927
582 MARKET STREET. SUITE 1400
SAN FRANCISCO, CA 94104
TELEPHONE: 415.678.2700

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................ 1

II.  JURISDICTIONAL STATEMENT ....................................................... 1

III.  STATEMENT OF ISSUES PRESENTED FOR REVIEW .................... 2

IV.  STATEMENT OF FACTS…………..…………………………….………3

V.  SUMMARY OF THE ARGUMENT ................................................. 10

VI.  ARGUMENT ........................................................................ 11

A.  Standard of Review ........................................................... 11

B.  The Class Definition Utilized was Not Precise, Objective and

Ascertainable ........................................................................ 12

i.  The Website and Full Notice Contained Inconsistent and
Contradictory Class Definitions…………………………………12

ii.  Class Counsel was Confused by its Own Class Definition……..……13

iii.  Defendant – Appellee Conceded the Notice was "Complex" and this
was Occasioned by the "Convoluted" Nature of the Underlying
Lawsuit ........................................................................ 14

iv.  Amendment Number 2 Substantially Modified the Class Definition
in the Absence of Due Process with Respect to Dell Computer Owners
........................................................................ 15

v.  The District Court Misapprehended the Class Definition ................ 16

B.  Due Process Requires that the Class Receive A Precise, Objective and

Ascertainable Notice for a Proposed Class Action Settlement that is not

Misleading ........................................................................ 19

i

C.  The District Court Failed to Properly Apply the Seventh *Hanlon* Factor

– Reaction of the Class to the Settlement Due to Notice Deficiencies ..... 21

  i.  Standard of Review ........................................................................... 21

  ii.  Consideration of Class Reaction to the Proposed Settlement .......... 23

D.  The District Court Abused its Discretion by Approving Class

Certification ................................................................................................ 24

E.  The Attorneys' Fees are Grossly Excessive ......................................... 24

VII.  CONCLUSION ...................................................................................... 24

VIII.  STATEMENT OF RELATED CASES ............................................. 26

IX.  CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 32-1 .... 27

X.  CERTIFICATE OF SERVICE…………………………………………..28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Cho v. Seagate Technology Holdings*, Inc.
  177 Cal. App. 4th 734 (Cal. App. 1st Dist. 2009) ..................... 9, 19, 20, 21

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992) ................................................................. 22

*Cooter & Gell v. Hartmarx Corp.*
  496 U.S. 384 (1990) ............................................................................... 23

*Ficalora v. Lockheed Cal. Co.*
  751 F.2d 995 (1985) ............................................................................... 22

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1992) ...................................................... 11, 22, 23

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) .................................................................. 22

*In re Veritas Software Sec. Litig.*
  496 F. 3d 962 (9th Cir. 2007)………………………………………….21, 22

*Kayes v. Pac. Lumber Co.*
  51 F.3d 1449 (9th Cir. 1995) .................................................................. 22

*MGIC Indem. Corp. v. Moore*
  952 F.2d 1120 (9th Cir. 1991) ................................................................ 23

*Molski v. Gleich*
  318 F.3d 937 (9th Cir. 2003) .......................................................... 9, 11, 19

*Mullane v. Cent. Hanover Bank & Trust Co.*
  339 U.S. 306 (1950) ............................................................................... 10

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v.*
  *Anderson*
  390 U.S. 414 (1968) ............................................................................... 23

*Schlup v. Delo*
    513 U.S. 298 (1995) ................................................................... 23

*Torrisi v. Tuscon Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) ...................................................... 12

*Twigg v. Sears, Roebuck & Co.*
    153 F.3d 1222 (11th Cir. 1998) ................................................ 21

*United States v. Plainbull*
    957 F.2d 724 (9th Cir. 1992) .................................................... 23

*United States v. Silverman*
    861 F.2d 571 (9th Cir. 1988) .................................................... 12

*Yepes-Praclo v. United States I.N.S.*
    10 F.3d 1363 (9th Cir. 1993) .................................................... 12

## Statutes

15 U.S.C. §§ 77z-1, 78u-4 .......................................................... 21

28 U.S.C. § 1291 .......................................................................... 2

28 U.S.C. § 1332 .......................................................................... 2

## I.  **INTRODUCTION**

This appeal arises from a judgment of the United States District Court for the Northern District of California, San Jose Division (Hon. James Ware presiding), approving the dismissal of a proposed class action pursuant to a settlement agreement.

Appellant – Objector, Steven F. Helfand, is a class member who filed timely objections to the settlement in compliance with the District Court's order on preliminary approval, and who appeared through counsel at the final approval hearing to argue against approval of the settlement.

Class Plaintiffs – Appellees, are Todd Feinstein, Brian Robinson, Nathan DeBockler, John Russo and Lance Waidzunas (hereafter collectively "Class Plaintiffs – Appellees") and Defendant – Appellee, is NVIDIA Corporation, Inc.

The District Court approved the settlement in an order filed on December 20, 2010 and Appellant – Objector timely appealed from the final judgment.

## II.  **JURISDICTIONAL STATEMENT**

The District Court had jurisdiction over all causes of action asserted in the underlying pleadings pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of Class Plaintiffs – Appellees, Todd Feinstein, Brian Robinson, Nathan DeBockler, John Russo and Lance Waidzunas (hereafter collectively "Class Plaintiffs – Appellees") and the members of the Class exceeded the sum or value of $5,000,000.00, and there was diversity of

1

citizenship between at least one member of the proposed Class and Defendant – Appellee, NVIDIA Corporation, Inc. *See*, *e.g.*, *Excerpts of Record*, pp. 2, 134-135; Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A).

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The District Court entered its order approving the nationwide class action settlement and releasing all outstanding claims on December 20, 2010. *Excerpts of Record*, p. 1.

Objector – Appellant, Steven F. Helfand, timely filed this appeal on January 18, 2011. *Excerpts of Record*, p. 26. The appeal is from a final judgment.

### III.  <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1. Was the Class definition utilized precise, objective, and ascertainable?

2. Was the Class notice misleading as to the Class definition and other material terms?

3. Were members of the Class permitted to make a meaningful determination as to whether they were, in fact, Class members, not to mention whether they could or should participate in the settlement by filing a claim, objection or request for exclusion?

4. Did the misleading notice preclude the District Court from making a proper assessment of the fairness, adequacy, and reasonableness of the proposed settlement?

IV. **STATEMENT OF FACTS**

To avoid repetitive statements of common facts, Appellant adopts by reference the Statements of Facts contained in the briefs submitted by all counsel for co-appellants pursuant to F.R.A.P. 28(i).  See also Circuit Advisory Committee Note to Circuit Rule 28-4.

We augment the facts incorporated by reference with the following additional facts with respect to the District Court's notice plan:

1. The home page for the settlement website specifies: "You may be a Settlement Class Member if you are a United States resident **who purchased for your own personal use and not for resale** one of the notebook computers listed in Section 7 of the Full Notice during the corresponding time period, which contained one of certain NVIDIA chips that were incorporated into some versions of those notebook computers."  See, *e.g*., www.nvidiasettlement.com (website checked July 31, 2011) [emphasis added];

2. Approximately 540,000 visitors viewed the settlement website and 84,000 unique email addresses registered through the website for future contact about the settlement.  See, *e.g*., *Excerpts of Record*, p. 52, lines 24-27, p. 72, lines 19-24.

3. On page 3, paragraph 5, the Full Notice instructs: "Judge Ware has decided that everyone who fits this description is a Class member: *All persons and entities resident in the United States*

3

of America who purchased a *"Class Computer" in the United States of America*." (emphasis in original). *Excerpts of Record*, p. 85. Over 5,000,000 copies of the Full Notice were disseminated to putative Class members. *Excerpts of Record*, p. 24, lines 24-25.

4. Defendant – Appellee conceded in its brief filed in reply to objections in the District Court that the notice is this case was "in some respects **complex**." See, Docket 306, p. 7, lines 16-18 [emphasis added]. Defendant – Appellee asserted this was "**necessary to permit resolution of a convoluted lawsuit on a class-wide basis**." See, Docket 306, p. 7, lines 16-18 [emphasis added].

5. In Class Plaintiffs – Appellees' reply memorandum in support of their motion for final approval of the proposed settlement, Class Counsel inaccurately asserted: "Here, **Class Members are defined by the Notice by: (1) purchase of a Class Computer, (2) during the date ranges indicated, and (3) experience of one or more 'Identified Symptoms.'**" Docket 302, p. 3, lines 9-12 [emphasis added]. But the Full Notice **does not** condition class member status on whether or not the person or entity experienced one or more so-called "Identified Symptoms." *Excerpts of Record*, p. 85. The same is true with regard to the Settlement Agreement and the various subsequent

4

amendments. *Excerpts of Record*, p. 134-203, p. 129, p. 137, ¶ 1.2, p. 142, ¶ 1.28.

6. Pursuant to the Settlement Agreement, "Settlement Class" "means all persons and entities resident in the United States of America who purchased a 'Class Computer' in the United States of America. Excluded from the Settlement Class are (1) employees of NVIDIA, including its current and former directors, officers, and counsel; (2) any entity that has a controlling interest in NVIDIA; (3) NVIDIA's affiliates and subsidiaries; and (4) the judge to whom this case is assigned and any members of the judge's immediate family." *Excerpts of Record*, p. 142, ¶ 1.28. "Class Computer" "means versions of the computer models listed below that contain an NVIDIA GPU or MCP, manufactured by HP, Dell or Apple, that were purchased in the United States during the listed period, subject to confirmatory discovery." *Excerpts of Record*, p. 137, ¶ 1.2.

7. On September 24, 2010, the settlement proponents amended the Settlement Agreement and revised the class definition in the Full Notice. *Excerpts of Record*, p. 129. In this regard the amendment provides, "Subject to confirmatory discovery, only Class Computers manufactured by Dell that contain NVIDIA GPUs with the following Stock Keeping Unit numbers shall be entitled to a remedy pursuant to this Settlement Agreement, and

5

**only Persons who purchased Dell Class Computers containing NVIDIA GPUs with the following NVIDIA Chip Stock Keeping Unit number shall be members of the class**: [table omitted]." *Excerpts of Record*, p. 130, ¶ 3 [emphasis added]. The settling parties **dropped** "entities" from the class definition with regard to Dell computer owners that was contained in the Full Notice and Settlement Agreement. *Id*., *Excerpts of Record*, p. 85, p. 137, ¶ 1.2, p. 142, ¶ 1.28. The amendment did not contemplate supplemental notice with regard to this change or a new motion for preliminary approval. *Excerpts of Record*, pp. 129-132.

8.  The term "*purchase*" is not described anywhere in the Full Notice, the Settlement Agreement or anywhere else. See, *e.g*., *Excerpts of Record*, p. 85, pp. 134-203. At the preliminary approval hearing conducted on August 30, 2010, Judge Ware suggested that the class definition may be even broader than indicated in the Full Notice and encompass owners of Class Computers who did not actually purchase them. The following extract relates to the "Proof of Purchase" requirement contained in the Settlement Agreement. *Excerpts of Record*, p. 140, ¶ 1.21:

> **The Court**: -- as opposed to the purchase material; or they write a letter to a friend saying, '**Thank you for the gift of**

**that wonderful computer**, it just is great,' a student who writes to mom or dad, '**Thank you for the gift of that laptop**. I'm starting school next week. **It was a timely gift**.' Something that shows the onset of use, as opposed to the purchase material." *Excerpts of Record*, p. 24, lines 3-9 [emphasis added].

In fairness to Class counsel, Attorney Westerman indicated that he did not believe the pertinent provisions of the Settlement Agreement were worded broadly enough "to pick up the letter that they might have sent to Aunt Jane for, 'Thanks for the gift.'" *Excerpts of Record*, p. 24, lines 10-14.

9.  On August 31, 2011, the settling parties revised the term "Proof of Purchase" so as to mean "one or more of the following documents, **which demonstrates that a member of the Settlement Class purchased a Class Computer**: a sales receipt, a credit card or other account statement, a shipping manifest, a purchase order, or such other documentation that the Administrator deems sufficiently reliable to demonstrate that one of the specified models was purchased in the specified date range." *Excerpts of Record*, p. 133 [emphasis added].

10. The Full Notice contains a different provision with respect or "Proof of Purchase." *Excerpts of Record*, p. 88, ¶ 15 ["Proof of purchase can be a sales receipt, credit card or other account

7

statement, shipping manifest, purchase order, proof of

registration, or such other documentation that the Administrator

deems sufficiently reliable to demonstrate that one of the

specified models was purchased in the specified purchase date

range, along with the product identification number found on

the back of your notebook computer and the date of when the

notebook computer was purchased."]

11.  The Full Notice states in ¶ 17 that "Released Claims" "means

all claims that were or could have been asserted in The

NVIDIA GPU Litigation, to the extent the arise out of or relate

to the weak die/packaging material set in NVIDIA GPU and

MCP products incorporated into Class Computers, including

Class Computers that exhibit Identified Symptoms." *Excerpts*

*of Record*, p. 88, ¶ 17.

12.  Appellant – Objector filed a written objection to the proposed

settlement on November 15, 2010.  *Excerpts of Record*, p. 57.

Mr. Helfand asserted that the Class definition was overly broad

and results in a release of claims without compensation and

disparate treatment of Class members.  *Excerpts of Record*, p.

59, ¶ § A.  Mr. Helfand argued that the Class definition was

"ambiguous" and failed to provide adequate notice.  *Excerpts of*

*Record*, p. 60, line 27.  Mr. Helfand further argued that: "In the

absence of an ascertainable class, it is not possible to give

adequate notice to class members or to determine after the litigation has concluded who is barred from relitigating (sic). The goal in defining the class is to use terminology that will convey sufficient meaning to enable persons hearing it to determine whether they are members of the class the plaintiff wishes to represent." *Excerpts of Record*, p. 60, line 27 – p. 61, line 6. Mr. Helfand challenged the provision for "Proof of Purchase," the overly broad release, in addition to the other points raised herein. *Excerpts of Record*, p. 61. Mr. Helfand cited *Cho v. Seagate Technology Holdings*, Inc. 177 Cal. App. 4th 734, 746 (Cal. App. 1st Dist. 2009) and *Molski v. Gleich*, 318 F.3d 937, 942 (2003). *Excerpts of Record*, p. 61. Mr. Helfand, a practicing attorney in good standing with the State Bar of California, testified that he originally purchased a Dell E1705 on behalf of his business entity and then subsequently converted it to personal use by purchasing it from his business. *Excerpts of Record*, p. 56, ¶ 6. At the final approval hearing on December 20, 2011, Mr. Helfand's counsel argued, among other matters, that the settlement was overinclusive. Reporter's Transcript, District Court Proceeding on December 20, 2010, p. 38, line 25 - p. 39, line 1.

13. As of May 18, 2011 the claims administrator had only approved approximately 40,000 claims. *Excerpts of Record*, p. 21.

## V.  **SUMMARY OF THE ARGUMENT**

The Supreme Court could have been speaking of this case when it stated: "When notice is a person's due, process which is a mere gesture is not due process."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  Class counsel's undue haste in seeking final approval of the settlement, coupled with the District Court's failure to consider all factors necessary to a legally sufficient analysis under Rule 23 has resulted in deficient class notice and an infirm final judgment.  Put simply, with respect to the notice utilized in this case, Class members did not possess the unambiguous information necessary to allow them to make educated decisions concerning participation in the Settlement.

Class action settlement notices have been the focus of recent appellate decisions by both this Court and California's First Appellate District.  The undercurrent of these cases instructs that a proper class action settlement should clearly describe class members who should be notified of the action and may be affected by its resolution.  In this regard, when a court approves the settlement or compromise of a class action, it must give notice to the class of its preliminary approval and the opportunity for class members to object and, in appropriate cases, opt out of the class.  Once a settlement is approved, a court is required to enter judgment upon the settlement and the judgment must include and describe those whom the court finds to be members of the class.  These principles rest upon the assumption that the definition of a plaintiff class will be clear and free from obvious ambiguity.

10

The settlement class definition in this case was vague and ambiguous compounding problems associated with the class action settlement notice that, by Defendant – Appellee's own admission, was "**complex**." In light of the ambiguity and lack of clarifying information that could mitigate it, the proposed settlement lacked a coherent class definition that was precise, objective and ascertainable and was misleading in contravention of this Court's teachings in *Molski v. Gleich*, 318 F.3d 937, 942 (2003).

Here, Class members were confronted with, for example, inconsistent class definitions and information that precluded them from making any meaningful determination as to whether they were, as a threshold matter, bound by the terms of the proposed settlement agreement, not to mention whether they could or should participate in the settlement by filing a claim, objection or request for exclusion. As a proximate result, the judgment of the District Court should be reversed and the case remanded so that the Class can be re-noticed and reconsider the fairness, adequacy and reasonableness of the proposed settlement pursuant to *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1992).

## VI.  <u>ARGUMENT</u>

### A.  <u>Standard of Review</u>

The adequacy of notice sent to class members involves two distinct issues, the method and the content. The content of a notice is reviewed *de novo. Torrisi v. Tuscon Elec. Power Co.,* 8 F.3d 1370, 1374 (9th Cir. 1993).

When *de novo* review applies, this Court independently considers matters

anew and does not defer to the lower court's rulings. *United States v. Silverman,* 861 F.2d 571, 576 (9th Cir. 1988); *See Yepes-Praclo v. United States I.N.S.*, 10 F.3d 1363, 1367 n.5 (9th Cir. 1993) ("To consider a matter de novo is to determine it anew, as if it had not been heard before and no decision had been rendered .... [W]hen we refer to *de novo* review, we refer, colloquially, to the fact that we do not defer to any degree to the lower court ruling or agency decision in question.").

## B.  The Class Definition Utilized was Not Precise, Objective and Ascertainable

### i.  The Website and Full Notice Contained Inconsistent and Contradictory Class Definitions

The home page for the settlement website specifies: "You may be a Settlement Class Member if you are a United States resident **who purchased for your own personal use and not for resale** one of the notebook computers listed in Section 7 of the Full Notice during the corresponding time period, which contained one of certain NVIDIA chips that were incorporated into some versions of those notebook computers."  See, *e.g*., www.nvidiasettlement.com (website checked July 31, 2011) [emphasis added];

Approximately 540,000 visitors viewed the settlement website and 84,000 unique email addresses registered through the website for future contact about the settlement.  *See, e.g., Excerpts of Record*, p. 52, lines 24-27, p. 72, lines 19-24.

However, notwithstanding the statement on the website, on page 3, paragraph 5, the Full Notice instructs: "Judge Ware has decided that

everyone who fits this description is a Class member:  *All persons and entities resident in the United States of America who purchased a "Class Computer" in the United States of America*."  [emphasis in original].  *Excerpts of Record*, p. 85.  Over 5,000,000 copies of the notice were disseminated to putative Class members.  *Excerpts of Record*, p. 24, lines 24-25.

Put simply, the so-called Full Notice did not contain limitations vis-à-vis "personal use" or "resale."  The settlement website was misleading.

### ii.  Class Counsel was Confused by its Own Class Definition

If the Class attorneys who negotiated the Settlement Agreement misapprehend the scope of the Class definition, lay Class members are unlikely to do any better.  In Class Plaintiffs – Appellees' reply memorandum in support of their motion for final approval of the proposed settlement, Class Counsel inaccurately asserted: "Here, **Class Members are defined by the Notice by: (1) purchase of a Class Computer, (2) during the date ranges indicated, and (3) experience of one or more 'Identified Symptoms.'**"  Docket 302, p. 3, lines 9-12. [emphasis added].  But the Full Notice **does not** condition class member status on whether or not the person or entity experienced one or more so-called "Identified Symptoms."  *Excerpts of Record*, p. 85.  The same is true with regard to the Settlement Agreement and the various subsequent amendments.  *Excerpts of Record*, p. 134-203, p. 129, p. 137, ¶ 1.2, p. 142, ¶ 1.28.  The same is true with respect to the prolix release buried in micro-font in the Full Notice at ¶ 17

13

["Released Claims" "means all claims that were or could have been asserted in The NVIDIA GPU Litigation, to the extent they arise out of or relate to the weak die/packaging material set in NVIDIA GPU and MCP products incorporated into Class Computers, including Class Computers that exhibit Identified Symptoms."] *Excerpts of Record*, p. 88, ¶ 17.

Notwithstanding Class counsel's evident confusion, pursuant to the Settlement Agreement, "Settlement Class" "means all persons and entities resident in the United States of America who purchased a 'Class Computer' in the United States of America. Excluded from the Settlement Class are (1) employees of NVIDIA, including its current and former directors, officers, and counsel; (2) any entity that has a controlling interest in NVIDIA; (3) NVIDIA's affiliates and subsidiaries; and (4) the judge to whom this case is assigned and any members of the judge's immediate family. *Excerpts of Record*, p. 142, ¶ 1.28. "Class Computer" "means versions of the computer models listed below that contain an NVIDIA GPU or MCP, manufactured by HP, Dell or Apple, that were purchased in the United States during the listed period, subject to confirmatory discovery." *Excerpts of Record*, p. 137, ¶ 1.2.

### iii. Defendant – Appellee Conceded the Notice was "Complex" and this was Occasioned by the "Convoluted" Nature of the Underlying Lawsuit

Defendant – Appellee conceded in its brief filed in reply to objections in the District Court that the notice is this case was "in some respects **complex**." See, Docket 306, p. 7, lines 16-18 (emphasis added). Defendant

– Appellee asserted this was "**necessary to permit resolution of a convoluted lawsuit on a class-wide basis**."  *See*, Docket 306, p. 7, lines 16-18 [emphasis added].  But this is a consumer class action and more attention should have been provided to mitigate the complexities.  The record reflects at least four Settlement Agreement Revisions (three by way of formal amendment and one by way of a change to the "Proof of Purchase" discussed *supra* and *infra*).  The ever-changing vicissitudes of the settlement proponents with respect to material terms underscores the difficulties confronted by the Class.

### iv.  Amendment Number 2 Substantially Modified the Class Definition in the Absence of Due Process with Respect to Dell Computer Owners

If confusion were not already sufficiently palpable, on September 24, 2010, the settlement proponents amended the Settlement Agreement and revised the class definition in the Full Notice.  In this regard the amendment provides, "Subject to confirmatory discovery, only Class Computers manufactured by Dell that contain NVIDIA GPUs with the following Stock Keeping Unit numbers shall be entitled to a remedy pursuant to this Settlement Agreement, and **only Persons who purchased Dell Class Computers containing NVIDIA GPUs with the following NVIDIA Chip Stock Keeping Unit number shall be members of the class**: [table omitted]."  *Excerpts of Record*, p. 130, ¶ 3. [emphasis added].  The settling parties **dropped** "entities" from the class definition with regard to Dell computer owners that was contained in the Full Notice and Settlement

15

Agreement.  *Id*., *Excerpts of Record*, p. 85, p. 137, ¶ 1.2, p. 142, ¶ 1.28.
More fundamentally, this is inconsistent with the definition contained within
the full notice.  The amendment did not contemplate supplemental notice
with regard to this change or a new motion for preliminary approval.
*Excerpts of Record*, pp. 129-132.

### v.  The District Court Misapprehended the Class Definition

The term "*purchase*" is not described anywhere in the Full Notice, the
Settlement Agreement, or anywhere else.  See, *e.g*., *Excerpts of Record*, p.
85, pp. 134-203.  At the preliminary approval hearing conducted on August
30, 2010, Judge Ware suggested that the class definition may even be
broader than indicated in the Full Notice and encompass owners of Class
Computers who did not actually purchase them.  The following extract
relates to the "Proof of Purchase" requirement contained in the Settlement
Agreement.  *Excerpts of Record*, p. 140, ¶ 1.21:

> **The Court**: -- as opposed to the purchase material; or they
> write a letter to a friend saying, '**Thank you for the gift of the**
> **that wonderful computer**, it just is great,' a student who
> writes to mom or dad, '**Thank you for the gift of that**
> **laptop**.  I'm starting school next week.  **It was a timely gift**.'
> Something that shows the onset of use, as opposed to the
> purchase material." *Excerpts of Record*, p. 24, lines 3-9
> [emphasis added].

16

In fairness to Class counsel, Attorney Westerman indicated that he did not believe the pertinent provisions of the Settlement Agreement were worded broadly enough "to pick up the letter that they might have sent to Aunt Jane for, 'Thanks for the gift.'"  *Excerpts of Record*, p. 24, lines 10-14.

However, on August 31, 2011, the settling parties revised the term "Proof of Purchase" so as to mean "one or more of the following documents, **which demonstrates that a member of the Settlement Class purchased a Class Computer**: a sales receipt, a credit card or other account statement, a shipping manifest, a purchase order, or such other documentation that the Administrator deems sufficiently reliable to demonstrate that one of the specified models was purchased in the specified date range."  *Excerpts of Record*, p. 133  [emphasis added].

In spite of this commitment to Judge Ware to modify the terms of the "Proof of Purchase" requirement, the Full Notice inexplicably contains a different provision with respect or proof of purchase.  *Excerpts of Record*, p. 88, ¶ 15 ["Proof of purchase can be a sales receipt, credit card or other account statement, shipping manifest, purchase order, proof of registration, or such other documentation that the Administrator deems sufficiently reliable to demonstrate that one of the specified models was purchased in the specified purchase date range, along with the product identification number found on the back of your notebook computer and the date of when the notebook computer was purchased."]

Irrespective of the disparity between the Full Notice and the August 31, 2011 revision, under either provision "*Aunt Jane's*" nephew or niece could, in fact, file a claim and may even be bound by the settlement release since the parties permitted inclusion of other persons who did not directly make a "purchase" so long as some other member of the settlement class did so during the relevant time frames set forth in the Settlement Agreement and notice plan.  Unfortunately, the settling parties failed to shed any light with regard to this revision with the Class, define key terms, or take any meaningful steps to develop a consistent and coherent notice.

### vi. The Ambiguous and Misleading Class Notice Adversely Impacted the Claims Rate

 In spite of the exuberance of the settlement proponents regarding the anticipated claims rate at the final and preliminary approval hearings, the claims rate in this case could best be described as shallow.  Less than one percent of the Class submitted claims in spite of the fact that well over ten times the number of claimants visited the settlement website and over one hundred times this number received the class action settlement notice. Indeed, half the number of putative Class members that registered online for updates concerning the proposed settlement failed to present any claims.  In this regard, as of May 18, 2011 the claims administrator had only approved approximately 40,000 claims.  *Excerpts of Record*, p. 21.  This paucity reduced the valuation of the proposed settlement by approximately ninety-seven percent, from $500 million to roughly $14 million, an amount almost

surpassed by Class counsel's $13,000,000 fee award.  See, *e.g.*, *Excerpts of Record,* p. 50, lines 6 – 14 [arguing that the valuation of this settlement should be based on "over $500 million in reserves relating to the defect."] Class counsel projected at least 166,000 claimants and "**an exponentially larger number of people [who will] qualify for (and will claim) the repair or replacement remedy**." *Excerpts of Record*, p. 50, lines 24-27. Class counsels' promises fell completely flat.

**B.  Due Process Requires that the Class Receive A Precise, Objective and Ascertainable Notice for a Proposed Class Action Settlement that is not Misleading**

In *Molski v. Gleich*, 318 F.3d 937, 942 (2003), this Court held that a class action settlement notice must not be misleading.  As discussed *supra*, the settling parties failed to comport with *Molski's* teachings.

Consistent with *Molksi*, in *Cho v. Seagate Technology Holdings*, Inc. 177 Cal. App. 4th 734 (Cal. App. 1st Dist. 2009), California's First Appellate District extensively discussed the purpose of class action settlement notices and, in particular, the class definition utilized.  The Court noted that "[t]he principal purpose of notice to the class is the protection of the integrity of the class action process, one of the functions of which is to prevent burdening the courts with multiple claims where one will do." *Cho, supra*, 177 Cal. App. 4th 734, 745, 746 (citation omitted).  "The notice "'must fairly apprise the class members of the terms of the proposed compromise and of the options open to the dissenting class members.'" *Cho, supra*, at 746 (citation omitted).  "The rules reflect a scheme that is designed to

19

clearly describe class members who should be notified of the action and may be affected by its resolution.  An order certifying a class "must contain a description of the class...."  *Id*.  "When the court determines it is unnecessary or not feasible to personally notify all potential class members of an action, 'the court may order a means of notice reasonably calculated to apprise the class members of the pendency of the action....'"  *Id*.  "When the court approves the settlement or compromise of a class action, it must give notice to the class of its preliminary approval and the opportunity for class members to object and, in appropriate cases, opt out of the class."  *Id*. "Once a settlement is approved, the court is required to enter judgment upon the settlement and the judgment 'must include and describe those whom the court finds to be members of the class.'"  *Id*.  "These principles rest upon an assumption that the definition of a plaintiff class will be clear and free from obvious ambiguity."  *Id*.

"A class definition that is ambiguous presents a problem of class ascertainability that 'goes to the heart of the question of class certification, which requires a class definition that is "precise, objective and presently ascertainable.'"  *Id*.  "In the absence of an ascertainable class, 'it is not possible to give adequate notice to class members or to determine after the litigation has concluded who is barred from relitigating.'"  "The goal in defining the class is to use terminology that will convey sufficient meaning to enable persons hearing it to determine whether they are members of the class plaintiff wishes to represent."  *Id.*

20

"We have no impression that there are large numbers of claimants who will come forward if the class definition and notice are corrected, but the problem with this notice creates more than a remote theoretical possibility that the claims of unsuspecting class members will be brushed aside." *Cho, supra,* at 747 (citation omitted). "An ambiguous class definition does not provide adequate notice." *Id.* citing *Twigg v. Sears, Roebuck & Co.* 153 F.3d 1222, 1227 (11th Cir. 1998). "It was error for the trial court to approve this settlement without correcting the ambiguous definition of the plaintiff class." *Cho, supra,* at 747.

Indeed, this Court recently considered the sufficiency of notice content in *In re Veritas Software Sec. Litig.,* 496 F. 3d 962, 972 (9th Cir. 2007). While *Veritas* concerned notice pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77z-1, 78u-4 ("PSLRA"), one of its most fundamental teachings is particularly instructive here. In this regard, "**[t]he absence of adequate notice injects a fatal flaw into the entire settlement process and undermines the district court's analysis of the fairness of the settlement under the Hanlon factors**." *Veritas, supra,* 496 F.3d at 972 [emphasis added]. For the reasons discussed above, the notice in this case did not comport with the requirements of *Molski, Cho* and *Veritas.*

## C. The District Court Failed to Properly Apply the Seventh *Hanlon* Factor – Reaction of the Class to the Settlement Due to Notice Deficiencies

### i. Standard of Review

The district court's failure to properly apply the seventh *Hanlon* factor is

reviewed under the abuse of discretion standard.  Generally, this court "*will not substitute its notions of fairness for those of the district judge and the parties to the agreement*."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291-92 (9th Cir. 1992), *cert. denied*, 506 U.S. 953 (1992).

However, reviewable for abuse of discretion is not the equivalent of unreviewable.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (the district court must comprehensively evaluate the relevant factors in order for its decision to survive appellate review).  Indeed, consistent with this deferential standard of review, courts have nonetheless recognized that class action settlements are "*subject to special court scrutiny*."  *Ficalora v. Lockheed Cal. Co.*, 751 F.2d 995, 996 (1985); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1992).

Under the abuse of discretion standard, a reviewing court may reverse a decision of the district court if it has a "*definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors.*"  *Kayes v. Pac. Lumber Co.,* 51 F.3d 1449, 1464 (9th Cir. 1995) (quotations and citations omitted).  Moreover, "*a district court may abuse its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact.*"  *Id.*   Put differently, it is an abuse of discretion, *per se*, for a court to base its approval of a settlement on an error of law.  *See Schlup v. Delo*, 513 U.S. 298, 333 (1995) (O'Connor, J., concurring) ("It is a paradigmatic abuse of discretion for a court to base its judgment on an

erroneous view of the law.") (citing *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 405 (1990); *United States v. Plainbull,* 957 F.2d 724, 725 (9th Cir. 1992).

Similarly, an abuse of discretion will be found when the record contains no evidence to support its decision. *MGIC Indem. Corp. v. Moore,* 952 F.2d 1120, 1122 (9th Cir. 1991).

### ii. Consideration of Class Reaction to the Proposed Settlement

*Hanlon* directs the district court to consider the reaction of the class to the settlement. *Hanlon, supra* at 1076. The District Court's view, however, of the small number of formal objectors is particularly myopic here because it did not consider the difficulty in deciphering the ambiguous Full Notice, settlement website, Settlement Agreement, and other materials discussed herein. As such, the District Court could not accurately weigh the reaction of the Class to the Settlement. Accordingly, the District Court's approval of the settlement must be reversed. *"To survive appellate review, the district court must show it has explored comprehensively all factors." Hanlon, supra* at 1026 citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 434 (1968). This was not done.

23

### D.  <u>The District Court Abused its Discretion by Approving Class Certification</u>

To avoid repetitive statements of fact common to all Appellants in this matter, Mr. Helfand adopts by reference the arguments regarding excessive attorneys' fees as so stated in the Opening Brief of Appellant Frank Barbara pursuant to F.R.A.P 28(i).  See also Circuit Advisory Committee Note to Circuit Rule 28-4.

### E.  <u>The Attorneys' Fees are Grossly Excessive</u>

To avoid repetitive statements of fact common to all Appellants in this matter, Mr. Helfand adopts by reference the arguments regarding excessive attorneys' fees as so stated in the Opening Brief of Appellant Nikki Johnson pursuant to F.R.A.P 28(i).  *See also* Circuit Advisory Committee Note to Circuit Rule 28-4.

## VII.  <u>CONCLUSION</u>

Appellant – Objector respectfully requests that this Court reverse District Court approval of the proposed settlement and direct further notice to the Class to address the problems documented herein with the notice plan.  Such a procedure would be consistent with substantial justice since the remedy in this settlement has already been distributed to existing claimants and will only serve the augment the benefits for the Class so as to minimize the problems the settlement proponents were solely responsible for creating. This Court should require that Class counsel return the $13,000,000 in fees

to Defendant – Appellee pending completion of the secondary notice and/or further assessment of the fairness, adequacy and reasonableness of the settlement.

Dated: August 1, 2011                          Respectfully submitted,

                                               By:  /s/ John W. Davis
                                               John W. Davis

## VIII.  <u>**STATEMENT OF RELATED CASES**</u>

Appellant – Objector Steven F. Helfand is aware of the following related cases which are pending in this Court:

Consolidated Appeals: 11-15182, 11-15186, 11-15191, 11-15192.

**IX.  CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 32-1**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached brief is proportionately spaced, has a typeface of 14 points and contains 5,976 words.

Dated: August 1, 2011                                    By: /s/ John W. Davis
                                                                        John W. Davis

## X.  **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 1, 2011.

I certify that all active participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.  All non-registered participants will be served via U.S. Mail.


Dated: August 1, 2011                                   By: /s/ John W. Davis
                                                              John W. Davis